**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE STEVEN E. FRACTION : <br>     RHONDA L. FRACTION a/k/a LYNNE FRACTION : <br> : <br>     Debtors : <br> : <br> : <br> STEVEN E. FRACTION : <br> RHONDA L. FRACTION a/k/a LYNNE FRACTION : <br> : <br>     Plaintiffs, : <br> : <br>     v. : <br> : <br> JACKLILY, LLC, : <br> SCOTT WATERMAN,  Chapter 13 Trustee : <br> : <br>     Defendants, : <br> : <br> SPECIALIZED LOAN SERVICING, LLC : <br> : <br>     Third Party Defendant : <br> : | Chapter 13 <br><br> Bky. No. 18-11159 ELF <br><br><br><br><br><br><br><br><br><br> Adv. No. 19-121 |

# **M E M O R A N D U M**

## **I.  INTRODUCTION**

Plaintiff-Debtors Steven and Rhonda Fraction ("the Debtors") own their residence subject to two (2) mortgages.  The junior mortgagee, Defendant Jacklily, LLC ("Jacklily"), filed a secured claim in this chapter 13 case.

In this adversary proceeding, the Debtors request a determination, pursuant to 11 U.S.C. §506(a), that Jacklily's claim should be disallowed as a secured claim and allowed only an unsecured claim.  The Debtors also request that the court void the lien that Jacklily holds on their property pursuant to the Third Circuit's decision in In re McDonald, 205 F.3d 606 (3d Cir.

2000).  In McDonald, the court held that the anti-modification clause of 11 U.S.C. §1322(b)(2) applies only if a claim is at least partially secured and therefore, a totally undersecured claim may be modified and its holder's lien stripped in a chapter 13 case.  Id. at 611, 614.

In response, Jacklily contends that its mortgage has priority over a portion of the senior mortgagee's mortgage because, after Jacklily recorded its mortgage, the first mortgagee and the Debtors modified that mortgage and increased the loan principal without Jacklily's consent, thereby prejudicing its lien position.  Therefore, according to Jacklily, its mortgage has priority over the increased portion of mortgage principal resulting from the modification.  Based on the value of the Debtors' residence, Jacklily's mortgage therefore, would only be undersecured — not wholly unsecured — and its lien would not be void under McDonald.

Each side has filed a Motion for Summary Judgment.

For the reasons explained below, I will grant the Debtors' Motion, deny Jacklily's Motion and grant the Debtors the relief that they seek.

## II.  PROCEDURAL HISTORY

The Debtors filed a petition for chapter 13 bankruptcy on February 21, 2018.  Included in the Debtors' bankruptcy estate is their primary residence — a single-family home at 6925 Tuscany Drive, Macungie, PA 18062  ("the Property").

Specialized Loan Servicing, LLC ("SLS") filed a proof of claim in the Debtors' bankruptcy case for $403,132.48.  This proof of claim indicated that SLS's claim is secured by a mortgage on the Property.  Jacklily subsequently filed a proof of claim in the Debtors' bankruptcy case for $206,375.99, which also asserted that Jacklily's claim is fully secured by a mortgage on the Property.

2

On August 20, 2018, the Debtors filed a Motion to Determine the Value of the Secured Claim of Jacklily.  After holding a hearing on that Motion on March 26, 2019, the court entered an Order on April 24, 2019 that determined the value of the Property as $400,000.00.[1]

On June 3, 2019, the Debtors filed the present adversary proceeding.  Their adversary complaint alleges that Jacklily's claim is wholly unsecured based on (1) the court's valuation of the Property at $400,000.00, (2) the Debtors' assertion that SLS's $403,132.48 secured claim has priority over Jacklily's $206,375.99 secured claim, and (3) the resulting conclusion that SLS's secured claim fully encumbers the Property.  Accordingly, the Debtors seek a determination in this adversary proceeding that the lien securing Jacklily's claim is void.[2]

---

[1]  The Debtors' bankruptcy case was assigned originally to the Hon. Richard E. Fehling.  The case was reassigned to the undersigned judge on May 22, 2019, upon Judge Fehling's retirement.

[2]  In a prior opinion, I have discussed how there is some procedural uncertainty regarding the proper procedure in a chapter 13 case for avoiding a totally undersecured claim that, otherwise, would be protected from modification and avoidance by 11 U.S.C. §1322(b)(2).  See In re Cusato, 485 B.R. 824, 829–31 & n.6 (Bankr. E.D. Pa. 2013)

I will not repeat that discussion here other than to point out that two (2) main approaches have developed since the Supreme Court held in Dewsnup v. Timm, 502 U.S. 410, 417 (1992) that 11 U.S.C. § 506(d) does not authorize the avoidance of a lien rendered unsecured by 11 U.S.C. 506(a):

> (1) avoidance through a valuation hearing (either prior to or at the confirmation hearing, see Fed. R. Bankr. P. 3012) combined with express provisions of the chapter 13 plan; or
>
> (2) avoidance in a stand-alone adversary proceeding (ostensibly on the theory that Dewsnup's holding is limited to chapter 7 cases).

As I further explained in In re Sligh, 542 B.R. 723, 726 (Bankr. E.D. Pa. 2015):

> In this district, the most common procedure invoked by chapter 13 debtors for avoidance of liens based on the secured property's lack of value is by adversary proceeding, a practice that the Third Circuit may have blessed implicitly in [In re]

*[f.n cont.]*

3

Jacklily filed an answer to the Debtors' adversary complaint on July 30, 2019.

The Debtors filed their Motion for Partial Summary Judgment on January 7, 2020.[3] Jacklily filed its Motion for Summary Judgment on January 10, 2020.

On February 7, 2020, with leave of court, Jacklily filed an amended answer to the Debtors' complaint, which included a third-party complaint against SLS. SLS filed an answer to Jacklily's third-party complaint on March 20, 2020, denying that that Jacklily's mortgage has priority over the modified portion of its own mortgage.

On September 16, 2020, after all the parties had filed memoranda in support of their positions, I entered an Order reopening the summary judgment record. The Order permitted the parties to submit any additional evidence regarding any modification of SLS's mortgage that occurred prior to its 2017 modification. I also granted the parties leave to file a supplemental memorandum of law addressing the effect of any additional evidence submitted to the court.

On October 1, 2020, each of the parties submitted additional evidence and/or memoranda on this issue to the court.

---

***[f.n. cont.]***

> McDonald, 205 F.3d 606, 611–12 (3d Cir.2000). See Cusato, 485 B.R. at 831 n. 6. However, at the conclusion of such adversary proceedings, the parties typically agree to include, or the court inserts, a provision in the lien avoidance order either deferring the effect of the avoidance until completion of the plan or vitiating the order if the case is converted or dismissed prior to completion of the plan. As a result, in this district, the line between the two (2) approaches described above is blurred and fairly indistinguishable.

[3] Although the Debtors labeled their Motion as one seeking "partial" summary judgment (because ostensibly, it focused only on the Second and Third Affirmative Defenses raised by Jacklily in its Answer to the Complaint), it is a fully dispositive motion. At the summary judgment stage, the Second and Third Affirmative Defenses are Jacklily's only defenses in this adversary proceeding. The other affirmative defenses in Jacklily's Answer to the Complaint are either boilerplate defenses that were not developed at summary judgment (e.g., failure to state a claim, laches, waiver), have been waived (lack of personal jurisdiction) or otherwise lack merit (the Debtors' "bad faith" -- which is a confirmation issue and is not legally relevant in this adversary proceeding).

4

To ensure that the parties had an opportunity to respond to newly submitted evidence, by Order dated October 20, 2020, I extended the deadline for final submissions until October 27, 2020. Jacklily submitted a Supplemental Memorandum of Law on October 27, 2020.

The motions are now ready for a decision.

### III.  SUMMARY JUDGMENT STANDARD

The Debtors and Jacklily have filed cross motions for summary judgment pursuant to Fed. R. Civ. P. 56, made applicable to adversary proceedings by Fed. R. Bankr. P. 7056. I have previously discussed the legal standard for summary judgment motions:

> Summary judgment is appropriate only when, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. E.g., Tri–M Group, LLC v. Sharp, 638 F.3d 406, 415 (3d Cir. 2011); In re Bath, 442 B.R. 377, 387 (Bankr. E.D. Pa. 2010). In other words, summary judgment may be entered if there are no disputed issues of material fact and the undisputed facts would require a directed verdict in favor of the movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).
>
> In evaluating a motion for summary judgment, the court's role is not to weigh the evidence, but to determine whether there is a disputed, material fact for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A genuine issue of material fact is one in which sufficient evidence exists that would permit a reasonable fact finder to return a verdict for the non-moving party. Id. at 248. In evaluating the record, the court must view the underlying facts and make all reasonable inferences therefrom in the light most favorable to the party opposing the motion. Montone v. City of Jersey City, 709 F.3d 181, 189 (3d Cir. 2013); United States v. 717 South Woodward St., 2 F.3d 529, 533 (3d Cir. 1993). On the other hand, if it appears that the evidence "is so one-sided that one party must prevail as a matter of law," the court should enter judgment in that party's favor. Anderson, 477 U.S. at 252.
>
> Proper resolution of a motion for summary judgment also requires consideration of the parties' respective burdens.
>
> As a threshold matter, the moving party's initial burden is to demonstrate that there are no disputed issues of material fact. E.g., U.S. v. Donovan, 661 F.3d 174, 185 (3d Cir. 2011); Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996); Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir. 1987). How the movant meets this burden

5

and how the respondent may rebut the movant's showing is affected by the allocation of the evidentiary burden of persuasion if the dispute were to proceed to trial.

If the moving party bears the burden of proof, the movant must "support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial." Fitzpatrick, 2 F.3d at 1115 (citation omitted). The evidence must establish "all the essential elements of its case on which it bears the burden of proof at trial, [such that] no reasonable jury could find for the non-moving party." Id. (citation omitted); see also Bath, 442 B.R. at 387. If the movant (with the burden of proof at trial) meets this initial burden, the responding party may not rest on the pleadings, but must designate specific factual averments through the use of affidavits or other permissible evidentiary material which demonstrate a genuine issue of material fact to be resolved at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson, 477 U.S. at 247–50.

If the moving party does *not* bear the burden of proof at trial, the analysis is more complicated. The movant must still demonstrate the absence of a disputed issue of material fact, but an entitlement to judgment in its favor may be established in either of two (2) ways.

First, and most simply, if the movant (who does not bear the burden of proof) presents evidence establishing that the undisputed facts negate at least one (1) element of the respondent's claim, the movant is entitled to summary judgment. See Quaker State Minit–Lube, Inc. v. Fireman's Fund Ins. Co., 868 F. Supp. 1278, 1287 n.5 (D. Utah 1994).

Alternatively, the movant may obtain summary judgment by demonstrating that the responding party (with the burden of proof at trial) lacks evidence to support an essential element of its claim. See, e.g., Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996); Chipollini, 814 F.2d at 896. . . . See Celotex, 477 U.S. at 322 ("[Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"); see also In re Roemmele, 2011 WL 4804833, at *4 (Bankr. E.D. Pa. Oct. 11, 2011).

In re Polichuk, 506 B.R. 405, 420-22 (Bankr. E.D. Pa. 2014) (footnotes omitted).

## IV. FACTS

The parties do not dispute the material facts in this adversary proceeding.

On November 15, 2006, the Debtors signed a promissory note with JPMorgan Chase Bank ("the Note"). In exchange for receipt of a $346,290.00 loan, the Debtors agreed to

repayment of the loan at 5.875% annual interest over thirty years. (Pls.' Mot. for Partial Summ. J., Ex. 1, at 8). The monthly payments of principal and interest under the Note totaled $2,048.44. (Id.)

To secure the Note, the Debtors granted a mortgage on the Property to Chase Home Finance, LLC ("the First Mortgage"). The First Mortgage stated that the underlying promissory note it secured had a principal balance of $346,290.00, plus interest, with a maturity date of December 1, 2036. (Id. at 21-22). The First Mortgage stated that it secured repayment of the "Loan," which included "the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest." (Id. at 22). The First Mortgage also specified that the borrower would make escrow payments to the bank for, among other things, taxes and insurance. (Id. at 26). Chase Home Finance recorded this mortgage on July 10, 2007.

On June 25, 2012, the Debtors executed a loan modification agreement to modify the Note underlying the mortgage on the Property ("the 2012 Modification"). Documentation from the lender indicates that, at that time, the Debtors' loan had an unpaid principal balance of $330.302.51, accrued and unpaid interest of $40,427.75, and unpaid escrow advances of $13,799.92. (Pls.' Add'l Evid. Matter, Ex. 5.1 at 1). Subtracting $2,762.04 in unapplied payments, the Plaintiff's adjusted unpaid balance was $381,768.14. (Id.)

The 2012 Modification altered the Debtors' loan by: extending the maturity date to June 2052, capitalizing the unpaid interest and escrow payments on the loan into a new principal balance of $381.768.14, lowering the interest due on the note from 5.875% to 5.000%, and lowering the monthly payments of principal and interest from $2,048.44 to $1,840.87. (Id. Ex. 5.2 at 2-3).

7

On April 1, 2016, the Debtors granted a second mortgage encumbering the Property to Jacklily, securing an additional promissory note in the original principal sum of $143,823.48, plus interest. (Jacklily Mot. for Summ. J., Ex. B). Jacklily recorded its mortgage ("the Jacklily Mortgage") on May 6, 2016. (Id. at 14).

On March 8, 2017 Chase Home Finance assigned the First Mortgage to SLS. The assignment was recorded on March 13, 2017. (Pls.' Mot. for Partial Summ. J., Ex. 1 at 39-41).

The Debtors and SLS executed a second modification of the Note underlying the First Mortgage on June 23, 2017 (the "2017 Modification"). According to documentation submitted by the lender, at that time, the Debtors' loan had an unpaid principal balance of $367,624.23, accrued and uncollected interest of $18,295.01, unpaid escrow advances of $4,495.22, and $41.56 in unpaid short payment advances. (Id., Ex. 3 at 1).

The 2017 Modification effected the following changes to the Note:

(1) the term of the SLS Mortgage was extended to June 1, 2057;

(2) the unpaid amounts of accrued interest, escrow advances, and short advances were added to the principal balance, resulting in a new principal balance of $390,456.02;

(3) the interest rate was lowered to 4.25%; and

(4) new monthly payments of principal and interest on the Note were lowered to $1,693.09.

(See id., Ex. 1, at 11-19).

When the Debtors commenced this bankruptcy case, the unpaid balance of the SLS Mortgage was $403,132.48.[4] The fair market value of the Property is $400,000.00.

---

[4] This fact is based on the proof of claim filed by SLS which is deemed allowed pursuant to 11 U.S.C. §502(a). In its summary judgment submissions, Jacklily has not presented any evidence to suggest that the unpaid balance of the SLS Mortgage as stated it SLS' proof of claim is incorrect.

8

## V. LEGAL PRINCIPLES GOVERNING MORTGAGE LIEN PRIORITY

### A. Mortgage Priority in Pennsylvania, Generally

Under Pennsylvania law, liens against real property generally have priority over each other based on whichever lien was recorded first.[5] See 42 Pa. C.S. §8141; see Krishnan v. Deutsche Bank Nat'l Tr. Co., 2016 WL 6092402, at *3 (Pa. Super. Oct. 18, 2016) (citing Farmers Trust Co. v. Bomberger, 523 A.2d 790, 792 (Pa. Super. 1987)). The purpose of recording statutes such as this is to give notice to potential creditors of any extant encumbrances on the property to serve as collateral. In re Trosky, 371 B.R. 701, 705 (Bankr. M.D. Pa. 2006) (citing Beckman v. Altoona Trust Co., 2 A.2d 826, 828 (Pa. 1938)).

A mortgage's priority is not limited to the principal balance of the loan that the mortgage secures. 42 Pa. C.S. §8144, provides: "In addition to any other indebtedness, a mortgage may secure . . ." certain advances made by the mortgagee for the protection of the mortgaged premises and the mortgagee's secured position. These advances include payments for: taxes, assessments, maintenance charges, insurance premiums, and costs incurred for the protection of mortgaged premises or by reason of the default of the mortgagor. Id. A mortgage stating that it secures such advances will be a lien on the mortgaged premises from the time of recording for the full amount of such unpaid advances, plus interest, regardless of when the advances are made. Id.

Unpaid interest that has accrued on a loan necessarily is secured with the same priority as the loan principal and the advances referenced in 42 Pa. C.S. §8144. While I cannot locate any reported decision (and the parties have not cited any reported decisions) stating this principle, I

---

[5] A few exceptions to this rule exist, but none are applicable here.

infer that there is no case law on the subject because the principle is so basic and obvious that no court has found it necessary to discuss the issue. Undoubtedly, when a loan accrues interest pursuant to a note, any unpaid, accrued interest is part of the obligor's debt under the note and as such is secured by a mortgage that secures repayment of the note. Indeed, it would make no sense for a statutory priority scheme to protect the priority of various advances commonly authorized by mortgages but not protect the priority of unpaid, accrued interest on the loan itself.

## VI. The Parties' Positions on the Effect of Mortgage Modifications on Mortgage Priority

Jacklily cites case law from other states and the Restatement (Third) of Property: Mortgages §7.3 (1997) ("the Restatement") for the proposition that a modification of a senior mortgage or the obligation it secures will cause the senior mortgage to lose priority to the extent that the modification prejudices junior mortgages.[6]

Jacklily also contends that the case of Ter-Hoven v. Kerns, 2 Pa. 96 (1845) applies here. According to Jacklily, Ter-Hoven established the binding principle that a junior mortgage would gain priority over a senior mortgage to the extent of any non-obligatory advances made by the senior mortgagee to the mortgagor and added to the senior loan after the junior mortgagee had recorded its interest.

---

[6] Section 7.3 of the Restatement provides:

> (b) If a senior mortgage or the obligation it secures is modified by the parties, the mortgage as modified retains priority as against junior interests in the real estate, except to the extent that the modification is materially prejudicial to the holders of such interests and is not within the scope of a reservation of right to modify as provided in Subsection (c).

For their part, the Debtors note that Pennsylvania has neither adopted nor rejected §7.3 of the Restatement. However, in the end, both the Debtors and SLS argue, consistent with §7.3(b) of the Restatement, that the modifications of the SLS Mortgage did not materially prejudice Jacklily under any of the legal standards presented and therefore, the SLS Mortgage retained priority, in its entirety, over the Jacklily mortgage.[7]

## VII.  DISCUSSION

### A.  Summary

A recent district court opinion confronted the issue before this court. See Hamilton v. Pennsylvania Housing Finance Agency, 614 B.R. 48 (E.D. Pa. 2020).

In Hamilton, the court observed that the Commonwealth Court in 2012 declined to adopt either §7.3 of the Restatement or an equitable subordination doctrine outside of bankruptcy. Id. at 57-58 (citing Newcrete Products v. City of Wilkes-Barre, 37 A.3d 7, 15 (Pa. Commw. 2012)). Having been tasked with predicting how the Pennsylvania Supreme Court would resolve the

---

[7]   As a "fall-back" argument, the Debtors contend that even if some portion of Jacklily's claim remains secured due to the loan modification, 11 U.S.C. §1322(b)(2) does not preclude bifurcation and partial avoidance of Jacklily's claim.

Section 1322(b) applies only to claims

> in which **the last payment on the original payments schedule** secured only by a security interest in real property that is the debtor's principal residence **is due before the date on which the final payment under the plan is due**.

(emphasis added).  The Debtors assert that the Jacklily loan matured prepetition and therefore, §1322(b)(2) does not apply.

It is unnecessary to reach this argument because the Debtors are entitled to even greater relief: a determination that Jacklily's claim is entirely unsecured.

11

issue, the district court concluded that it was appropriate to decline to adopt such a new rule in Pennsylvania. Id.

I will approach the issue a bit differently than the Hamilton court. I find it unnecessary to determine whether §7.3 of the Restatement applies in Pennsylvania. Instead, I will assume arguendo that the legal principles stated in either §7.3 of the Restatement or the 175 year-old Ter-Hoven case control. After doing so, however, I conclude that there is no basis to subordinate SLS' lien position.

The 2012 and 2017 Modifications neither constituted "future advances" or "new debt" (under Ter-Hoven), nor materially prejudiced Jacklily's mortgage position (as contemplated by the Restatement).

**B. The Loan Modifications Were Not "New Advances" and Did Not Materially Prejudice Jacklily's Secured Position**

As discussed earlier, the SLS Mortgage secured payment under the note of the principal balance, accruing interest and various other advances specified in the Note. Consequently, the 2012 and 2017 Modifications did not add to the existing indebtedness under the Note.[8]

Moreover, the Modifications did not prejudice Jacklily. In fact, the Modifications benefited the junior lienholder by reducing the ongoing interest rate on the existing indebtedness under the Note.

---

[8] It is extremely doubtful that I should even consider the 2012 Modification in evaluating Jacklily's subordination request. The 2012 Modification occurred before Jacklily extended credit to the Debtors. Thus, any reasonable underwriting inquiry by Jacklily would have revealed the full extent of the Debtors' obligation on the senior mortgage -- including the terms of the debt as modified. Jacklily entered in to its loan transaction with the Debtors anyway and should not be heard to complain.

Nevertheless, for sake of discussion and completeness, I will analyze both the 2012 and 2017 Modifications.

### 1.  no new advance

When the Debtors executed the 2012 Modification of the Note, the Note had an unpaid principal balance of $330,302.51, accrued and unpaid interest totaling $40,427.75, and unpaid escrow advances totaling $13,799.92.  (See Pls.' Add'l Evid. Matter, Ex. 5-1 at 1).  By recapitalizing the Debtors' extant arrears into a new, higher principal balance of $381,768.14, the 2012 Modification only restructured the debt under the Note that was already owed.  Pursuant to the SLS Mortgage, such arrears on the Note were secured along with the principal balance.

The same conclusion holds for the 2017 Modification.  When the 2017 Modification was executed, the Note had an unpaid principal balance of $367,624.23, accrued and uncollected interest of $18,295.01, unpaid escrow advances of $4,495.22, and $41.56 in unpaid short payment advances.  (Pls.' Mot. for Partial Summ. J., Ex. 3 at 1).  Like the 2012 Modification, the 2017 Modification recapitalized the secured arrears owed by the Debtors under the Note into a higher principal balance of $390,456.02.

Jacklily contends that the 2012 and 2017 Modifications created an increased principal balance on the Note, which constituted a new, non-mandatory advance under Ter-Hoven.  As Jacklily reads Ter-Hoven, the increase in principal balance does not attain lien priority over Jacklily's existing, junior mortgage.

Ter-Hoven does not support the conclusion that the recapitalized amounts were "future advances" that would be subordinated to Jacklily's Mortgage.  In speaking of future advances that might impact the senior lienholder's priority, the Ter-Hoven court referred the "creat[ion of] a liability **for the first time**."  2 Pa. at 99 (emphasis added).  Here, however, the Modifications created no liabilities "for the first time."  They merely recapitalized interest and costs that were

already owed and secured under the original Note. Thus, there were no "future advances" or "new debt" resulting from the Modifications. Ter-Hoven is inapposite.

### 2. no prejudice

By lowering the interest rate on the note from 5.875% to 5.000%, the 2012 Modification lowered the monthly payments of principal and interest on the Note from $2,048.44 to $1,840.87. (Compare Pls.' Add'l Evid. Matter, Ex. 5-2 at 3, with Pls.' Mot. for Partial Summ. J., Ex. 1 at 8).[9]

The same holds true for the 2017 Modification. By reducing the Note's interest rate again from 5.00% to 4.25%, the 2017 Modification further reduced monthly payments of principal and interest to $1,693.09. (See id., Ex. 1 at 11-19).[10]

Thus, even accounting for the increased principal added to the balance of the Note, both Modifications had the effect of *reducing* the amount of the Debtors' indebtedness under SLS Mortgage over time. If the Debtors defaulted under its terms, the 2012 Modification would have placed any junior lienholders in a *superior* position compared to the position they would have had under the terms of the original Note.

One additional point warrants mention.

---

[9] Looking at this issue from an "interest only" perspective reinforces this conclusion.

Prior to the 2012 Modification, the annual 5.875% interest accruing on the Note's remaining principal balance of $330,302.51 was $19,405.27. After the 2012 Modification, the annual 5.000% interest accruing on the new principal balance of $381,768.14 was only $19.088.41. Again, any junior lienholders would have benefitted from the 2012 Modification because the indebtedness accruing to the senior Note would have fallen over time compared to the debt structure of the original Note.

[10] The annual accrual of interest on the Note likewise fell from $18,381.21 (5.00% of $367,624.23) to $16,594.38 (4.25% of $390,456.02).

14

Both the 2012 Modification and the 2017 Modification extended the maturity date of the Note from 2036, to 2052 and 2057, respectively. The Restatement takes the position that extensions such as these are beneficial to junior lienholders, as they generally reduce the likelihood of foreclosure of the senior mortgage. See id. at cmt. c. This component of the Modifications likewise did not prejudice Jacklily's secured position.[11]

### VIII. CONCLUSION

The undisputed facts here do not warrant a finding that any part of the SLS Mortgage should lose priority to the Jacklily Mortgage.

Both the 2012 Modification and the 2017 Modification only reconfigured the secured debt already owed by the Debtors under the Note. Neither Modification constituted a new advance of funds from SLS to the Debtors within the meaning of Ter-Hoven. Further, because both Modifications reduced the interest rate and the accrual of interest, they benefitted Jacklily, as a junior mortgagee, rather than prejudicing its lien position. Cf. Restatement § 7.3 cmt. b (modifications that increase interest rates can materially prejudice junior lienholders where the new rates increase the amount of the senior mortgage obligation).

---

[11] Jacklily's also argues that both the 2012 Modification and 2017 Modification constituted "new mortgages" that should have been recorded. Jacklily asserts that due to the changes they effected to the underlying Note, these Modifications represented a "new interest in land." (Defs.' Supp. Mem. of Law, at 2-3). If the increased principal represented a "new mortgage" that should have been, but was not recorded, Jacklily suggests that it's recorded mortgage has priority over the increased principal.

This argument also fails.

Jacklily cites no authority for the proposition that, under Pennsylvania law, the modification of an obligation secured by a mortgage, in the form of capitalization of existing debt, must be recorded for the mortgage to maintain its priority. The Modifications simply recapitalized debt that the SLS Mortgage already secured. Therefore, contrary to Jacklily's position, the Modifications created no "new interest" in the Property requiring recordation in order to establish lien priority.

Given this court's valuation of the Property at $400,000.00 and SLS's currently undisputed claim of $403,132.48 that is secured by the Property, the evidence establishes that Jacklily's Mortgage is wholly unsecured. Consequently, the Debtors have demonstrated an entitlement to partial summary judgment on the issue of Jacklily's Second Affirmative Defense. Their motion will be granted and Jacklily's motion will denied.

An order consistent with this Memorandum will be entered.

**Date: November 19, 2020**

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**

16